IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILADELPHIA INDEMNITY          *
 INSURANCE COMPANY
P.O. Box 950                    *
One Bala Plaza, Suite 100
Bala Cynwyd, PA 19004           *


and                             *


ESSENTIAL BRANDS, INC.          *     Civil Action No.: 20 CV 669 RDB
3415 Box Hill Corporate Center Drive
Abingdon, MD 21009              *


and                             *


KIDDIE ACADEMY DOMESTIC         *
 FRANCHISING, LLC
3415 Box Hill Corporate Center Drive  *
Abingdon, MD 21009

                                *

        Plaintiffs              *


v.                              *


MARKEL INSURANCE COMPANY        *
4521 Highwoods Parkway
Glen Allen, VA 23060            *


Serve:                          *
  .

Maryland Insurance Administration  *
200 St. Paul Place, Suite 2700
Baltimore, MD 21202             *


and                             *


KA BROADWAY, LLC d/b/a KIDDIE   *
 ACADEMY PEARLAND EAST
2201 Bayou Cove Lane            *
League City, TX 77573           *

Serve:                                      *
Jason Michael White, Resident Agent
2201 Bayou Cove Lane                        *
League City, TX 77573
                                            *
and
                                            *
**BULLOCK'S BRIGHT BEGINNINGS, LLC**
2108 Bayou Cove Lane                        *
League City, TX 77573
                                            *
Serve:
Cory Bullock, Resident Agent                *
2108 Bayou Cove Lane
League City, TX 77573                       *

and                                         *

**CORY BULLOCK**
2108 Bayou Cove Lane
League City, TX 77573                       *

and                                         *

**SUMMER BULLOCK**                          *
2108 Bayou Cove Lane
League City, TX 77573                       *

     **Defendants**              *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## COMPLAINT FOR BREACH OF CONTRACT
## AND DECLARATORY JUDGMENT

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201,

Plaintiffs Philadelphia Indemnity Insurance Company, Essential Brands, Inc., and Kiddie

Academy Domestic Franchising, LLC (collectively referred to as "Plaintiffs") bring this suit for

Declaratory Judgment against Defendants Markel Insurance Company and KA Broadway, LLC,

d/b/a Kiddie Academy Pearland East, Bullock's Bright Beginnings, LLC, Cory Bullock, and Summer Bullock and state as follows:

## PARTIES

1.      Philadelphia Indemnity Insurance Company ("PIIC") is an insurance company organized and existing in the Commonwealth of Pennsylvania.

2.      Essential Brands, Inc. ("Essential") is a corporation organized and existing in the State of Maryland.  Essential is the parent of Kiddie Academy Domestic Franchising, LLC.

3.      Kiddie Academy Domestic Franchising, LLC ("KADF") is a limited liability company organized and existing in the State of Maryland.

4.      Markel Insurance Company ("Markel") is an insurance company organized and existing in the Commonwealth of Virginia.

5.      KA Broadway, LLC, d/b/a Kiddie Academy Pearland East ("KA Broadway") is a limited liability company organized and existing in the State of Texas.

6.      Bullocks Bright Beginnings, LLC ("Bullocks") is a limited liability company organized and existing in the State of Texas.

7.      Cory Bullock ("Mr. Bullock") is an individual resident of the State of Texas.

8.      Summer Bullock ("Ms. Bullock") is an individual resident of the State of Texas.

## JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction because the amount in controversy exceeds $75,000 and the parties have complete diversity of citizenship.

10.      Pursuant to 28 U.S.C. § 2201, the matter in controversy involves a declaration of the rights, duties, and obligations of the parties under insurance policies and other contracts.

3

11.    This Court is the proper venue for this dispute pursuant to Paragraph 27.2 of the Franchise Agreements between KADF and KA Broadway and between KADF and Bullocks/Mr. Bullock/Ms. Bullock which state, "The parties agree that any cause of action by either party against the other must be filed in the United States District Court for the District of Maryland or the Circuit Court for Harford County, State of Maryland, and the parties and all personal guarantors hereof do hereby waive all questions of personal and subject matter jurisdiction or venue for the purpose of carrying out this provision...."

## FACTS REGARDING PRIOR LITIGATION

### The Lewis Case/KA Broadway, LLC

12.    On or about November 7, 2013, KADF and KA Broadway entered into a Franchise Agreement under which KADF granted KA Broadway the right to operate a Kiddie Academy Child Care Learning Center in Pearland, Texas.

13.    Paragraph 14 of the Franchise Agreement required KA Broadway to procure:

14.2.1  Comprehensive general liability insurance, including, without limitation, personal injury, premises liability, errors and omissions, products/completed operations, fire and contractual liability in the amount of One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) in the aggregate.

14.2.2  Teachers' professional liability insurance in the amount of One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) in the aggregate, separate and apart from the comprehensive general liability insurance limits.

14.2.9  Umbrella liability insurance (commonly referred to as excess liability insurance) in the amount of no less than Three Million Dollars ($3,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate.

14.    Paragraph 21 of the Franchise Agreement provides:

4

## 21. INDEPENDENT CONTRACTOR; INDEMNIFICATION

### 21.2 Indemnification

Nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty or representation on Franchisor's behalf, or to incur any debt or other obligation in Franchisor's name. Franchisor will in no event assume liability for, or be deemed liable under this Agreement as a result of any such action by Franchisee; nor will Franchisor be liable by reason of any act or omission of Franchisee in its conduct in operating the Franchised Business or for any claim or judgment arising from the operation of the Franchised Business. Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against and from any and all claims arising either directly or indirectly from, as a result of, or in connection with the operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them. This provision and all of its parts shall survive the termination or expiration of this Agreement.

15.     On or about October 27, 2017, Robert Lewis, Individually and as Next Friend of the Minor, K. L., filed a lawsuit in the District Court of Brazoria County, Texas against KA Broadway, Essential, and KADF arising out of an incident which occurred on June 19, 2017 (the "Incident"). Such lawsuit was styled *Robert Lewis, et al. v. KA Broadway, LLC, et al.*, Cause No. 93954-CV (the "Underlying Lewis Litigation").

## The McNeel Case/Bullocks Bright Beginnings, LLC

16.     On or about March 12, 2007, KADF and Mr. and Ms. Bullock entered into a Franchise Agreement under which KADF granted Mr. and Ms. Bullock the right to operate a Kiddie Academy Child Care Learning Center in League City, Texas.

17.     Paragraph 14 of the Franchise Agreement required Mr. and Ms. Bullock to procure:

14.2(a) Comprehensive general liability insurance, including personal injury, errors and omissions, products/completed operations, contractual liability, teachers professional liability, sexual abuse and molestation and products liability, as well as comprehensive automobile liability coverage for both owned and non-owned vehicles, and property damage liability coverage, in the amount of Two Million Dollars ($2,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate.

18.     Paragraph 20.3 of the Franchise Agreement provides:

**Indemnification**

It is understood that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty or representation on Franchisor's behalf, or to incur any debt or other obligation in Franchisor's name. Franchisor will in no event assume liability for, or be deemed liable under this Agreement as a result of any such action; nor will Franchisor be liable by reason of any act or omission of Franchisee in its conduct in operating the Franchised Business or for any claim or judgment arising from the operation of the Franchised Business against Franchisee or Franchisor. Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against any and all claims arising directly or indirectly from, as a result of, or in connection with Franchisee's operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them. This provision and all of its parts shall survive the termination or expiration of this Agreement.

19.     On or about October 17, 2018, Jared and Lindsey McNeel, Individually and as Natural Representatives of the Estate of S.M.M., filed a lawsuit in the District Court of Galveston County, Texas against Kiddie Academy International, Inc., Bullocks Bright Beginnings, LLC, Cory Bullock and Summer Bullock, d/b/a Kiddie Academy of League City, arising out of an incident which occurred on August 27, 2018 (the "Incident"). Such lawsuit was styled *Jared McNeel, et al. v. Kiddie Academy International, Inc., et al.*, Case No. 18-CV-1455 (the

"Underlying McNeel State Litigation"). A First Amended Complaint added Essential Brands, Inc. to the case as a defendant. On February 20, 2019, Plaintiffs served their Third Amended Petition, omitting co-Defendants, Kiddie Academy International, Inc. and Essential Brands, Inc. from the pleading and effectively dismissing them from the suit.

20.     The McNeel Plaintiffs reached a settlement agreement with Bullocks and Mr. and Ms. Bullock in the Underlying State Litigation and that case was dismissed. Because the remaining defendants were now completely diverse from the Plaintiffs, the case was removed to the U.S. District Court for the Southern District of Texas and through further amendments made claims against Kiddie Academy International, Inc., Essential Brands, Inc., and Kiddie Academy Domestic Franchising, LLC, in a case styled *Jared McNeel, et al. v. Kiddie Academy International, Inc., et al.*, Case No. 19-cv-178 (the "Underlying McNeel Federal Litigation").

### THE MARKEL POLICIES

21.     At the time of the incident involved in the Underlying Lewis Litigation, Markel issued a Commercial General Liability Policy of insurance to KA Broadway, Policy No. CCP20027298, with effective dates of December 16, 2016 to December 16, 2017, and with limits of liability of $1,000,000 in general liability coverage and $1,000,000 in professional liability coverage (the "Markel CGL Policy").

22.     The Markel CGL Policy provides in relevant part as follows:

#### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

7

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

\*       \*       \*

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.  Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. ...

\*       \*       \*

## TEXAS PROFESSIONAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following changes apply only to the coverage provided by this endorsement.

**A.** The following is added to Section I – Coverages:

## MISCELLANEOUS PROFESSIONAL LIABILITY

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of injury arising out of a "wrongful act" of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies. ...

b.  This insurance applies to injury only if:

8

(1) The injury is caused by a "wrongful act" that takes place in the "coverage territory";

(2) The injury occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or received notice of a "wrongful act" or claim, knew that the injury had occurred, in whole or in part. ...

\*     \*     \*

D. Section III – Limits of Insurance is replaced by the following:

**LIMITS OF INSURANCE**

4. The limits of insurance provided by this endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form.

\*     \*     \*

F. The following are added to the Definitions section:

"Wrongful act" means any actual or alleged negligent act, error or omission in the rendering or failure to render professional services to others out of your operations, including the furnishing of food, beverages, medications or appliances in connection with those operations.

23.    At the time of the incident involved in the Underlying Lewis Litigation, Markel also issued an Umbrella Liability Policy of insurance to KA Broadway, Policy No. CCU20027298, with effective dates of December 16, 2016 to December 16, 2017, and with limits of liability of $3,000,000 (the "Markel Umbrella Policy").

24.    Essential and KADF are Additional Insureds under both Markel Policies.

25.    At the time of the incident involved in the Underlying McNeel State Litigation and Underlying McNeel Federal Litigation, Markel issued a Commercial General Liability Policy of insurance to Bullocks, Policy No. CCG20015989-05, with effective dates of July 21, 2018

9

to July 21, 2019, and with limits of liability of $1,000,000 in general liability coverage and $1,000,000 in professional liability coverage (the "Markel CGL Policy").

26.     The Markel CGL Policy provides in relevant part as follows:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION I – COVERAGES
### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

*     *     *

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

4.  **Other Insurance**
    If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

    a.  **Primary Insurance**

        This insurance is primary except when Paragraph **b.** below applies. ...

*     *     *

### TEXAS PROFESSIONAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following changes apply only to the coverage provided by this endorsement.

**A.** The following is added to Section I – Coverages:

**MISCELLANEOUS PROFESSIONAL LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of injury arising out of a "wrongful act" of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies. …

   b. This insurance applies to injury only if:
      (1) The injury is caused by a "wrongful act" that takes place in the "coverage territory";
      (2) The injury occurs during the policy period; and
      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or received notice of a "wrongful act" or claim, knew that the injury had occurred, in whole or in part. …

*     *     *

**D.** Section III – Limits of Insurance is replaced by the following:

**LIMITS OF INSURANCE**

4. The limits of insurance provided by this endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form.

*     *     *

**F.** The following are added to the Definitions section:

"Wrongful act" means any actual or alleged negligent act, error or omission in the rendering or failure to render professional services to others out of your operations, including the furnishing of food, beverages, medications or appliances in connection with those operations.

27. Essential and KADF are Additional Insureds under the Markel Policies.

## THE PIIC POLICIES

28.     At the time of the incident involved in the Underlying Lewis Litigation, PIIC issued a Commercial General Liability Policy of insurance to Essential and KADF, Policy No. PHPK1592227, with effective dates of December 31, 2016 to December 31, 2017, and with limits of liability of $1,000,000 (the "PIIC CGL Policy").

29.     At the time of the Underlying Lewis Litigation, PIIC issued also a Commercial Umbrella Liability Policy of insurance to Essential and KADF, Policy No. PHUB567838, with effective dates of December 31, 2016 to December 31, 2017, and with limits of liability of $10,000,000 (the "PIIC Umbrella Policy").

30.     At the time of the incident involved in the Underlying McNeel State and Federal Litigations, PIIC issued a Commercial General Liability Policy of insurance to Essential and KADF, Policy No. PHPK1757163, with effective dates of December 31, 2017 to December 31, 2018, and with limits of liability of $1,000,000 (the "PIIC CGL Policy").

31.     At the time of the Underlying McNeel State and Federal Litigations, PIIC issued also a Commercial Umbrella Liability Policy of insurance to Essential and KADF, Policy No. PHUB612780, with effective dates of December 31, 2017 to December 31, 2018, and with limits of liability of $10,000,000 (the "PIIC Umbrella Policy").

## SETTLEMENT OF THE LEWIS LITIGATION

32.     On or about September 5, 2019, KA Broadway, Essential, and KADF agreed to settle the Underlying Lewis Litigation by paying a total sum of $6,000,000 to Mr. Lewis.

33.   To achieve that settlement, KA Broadway's insurer, Markel, contributed $4,000,000 towards the settlement on behalf of KA Broadway, while PIIC contributed $2,000,000 on behalf of Essential and KADF.

34.   Specifically, Markel contributed $1,000,000 in professional liability coverage from the Markel CGL Policy and the $3,000,000 policy limits from the Markel Umbrella Policy. Markel did not contribute any of the limits of the general liability coverage from the Markel CGL Policy.

35.   PIIC contributed $1,000,000 in general liability coverage from the PIIC CGL Policy and $1,000,000 from the PIIC Umbrella Policy.

36.   A dispute has arisen regarding the amounts the insurers were obligated to contribute to the settlement of the Lewis Litigation.

37.   Plaintiffs contend that Markel failed to exhaust its policy limits under the CGL which was primary to all other policies.

38.   Specifically, Plaintiffs contend that Markel was required to contribute both $1,000,000 in professional liability coverage and $1,000,000 in general liability coverage from the Markel CGL Policy.

39.   If Markel had contributed a total of $5,000,000 towards the settlement, as Plaintiffs contend it was obligated to, PIIC would not have had to contribute $1,000,000 from the PIIC Umbrella Policy.

40.   The Markel CGL Policy provides "The limits of insurance provided by this [Texas Professional Liability Coverage] endorsement are in addition to the limits of insurance

provided by the Commercial General Liability Coverage Form." *See* TEXAS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT, D. Limits of Insurance, 4.

41.     Markel disputes that it is obligated under the Markel CGL Policy to contribute $1,000,000 in general liability coverage towards the settlement of the Lewis Litigation.

42.     There exists an actual, justiciable controversy as to whether Markel is obligated under the Markel CGL Policy to contribute $1,000,000 in general liability coverage towards the settlement.

43.     KA Broadway failed to meet its contractual obligation to Essential and KADF to provide $2,000,000 in primary general liability and professional liability coverage to settle the Lewis Litigation.

**SETTLEMENT EFFORTS REGARDING THE McNEEL LITIGATION**

44.     On or about January 17, 2020, a mediation was held in the McNeel Federal Litigation. Essential, KADF, and PIIC requested that Bullocks, Mr. and Ms. Bullock, and Markel attend the mediation and contribute to settlement of the claims in accordance with the terms of the Franchise Agreement and the Markel Policy.

45.     Bullocks, Mr. and Ms. Bullock, and Markel all refused to attend the mediation and the McNeel Federal Litigation was not settled and remains ongoing.

46.     Markel has asserted that it has exhausted its Policy limits when it settled the McNeel State Litigation with a contribution of $1,000,000 in general liability coverage from the Markel CGL Policy.

47.     Markel did not contribute any of the limits of the professional liability coverage from the Markel CGL Policy to settle the McNeel State Litigation.

14

48.     A dispute has arisen regarding the amounts the insurers are obligated to contribute to the settlement of the McNeel Federal Litigation.

49.     Plaintiffs contend that Markel failed to exhaust its policy limits under the CGL which was primary to all other policies.

50.     Specifically, Plaintiffs contend that Markel was required to contribute both $1,000,000 in professional liability coverage and $1,000,000 in general liability coverage from the Markel CGL Policy.

51.     The Markel CGL Policy provides "The limits of insurance provided by this [Texas Professional Liability Coverage] endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form." *See* TEXAS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT, D. Limits of Insurance, 4.

52.     Markel disputes that it is obligated under the Markel CGL Policy to contribute $1,000,000 in professional liability coverage towards the settlement of the McNeel Federal Litigation.

53.     There exists an actual, justiciable controversy as to whether Markel is obligated under the Markel CGL Policy to contribute $1,000,000 in professional liability coverage towards the settlement of the McNeel Federal Litigation.

54.     Bullocks, and Mr. and Ms. Bullock failed to meet their contractual obligation to Essential and KADF to provide $2,000,000 in primary general liability and professional liability coverage to settle the McNeel Federal Litigation.

## COUNT I
### Declaratory Judgment - Markel is obligated under the Markel CGL Policies to contribute $1,000,000 in general liability coverage and $1,000,000 in professional liability coverage towards the settlements of cases against Essential and KADF.

55.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

56.     The Markel CGL Policies provide: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See* COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement.

57.     The Markel CGL Policies provide: "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows: a. Primary Insurance. This insurance is primary except when Paragraph b. below applies." *See* COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, a. Primary Insurance.

58.     None of the conditions of Paragraph b. applies to change the status of the Markel CGL Policies as primary.

59.     The Markel CGL Policies provide: "The limits of insurance provided by this [Texas Professional Liability Coverage] endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form." *See* TEXAS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT, D. Limits of Insurance, 4.

16

60.     This Markel policies require that both the professional liability coverage limits and the commercial general liability coverage limits should have been paid in settlement of both the Lewis Litigation and the McNeel Federal Litigation.

WHEREFORE, Plaintiffs Philadelphia Indemnity Insurance Company, Essential Brands, Inc., and Kiddie Academy Domestic Franchising, LLC request this Honorable Court enter judgment in their favor and against Defendants Markel Insurance Company, KA Broadway, LLC, d/b/a Kiddie Academy Pearland East, Bullock's Bright Beginnings, LLC, Cory Bullock, and Summer Bullock and declare the following:

a)      That both the professional liability coverage and general liability coverage limits of the Markel CGL Policies must be paid in settlement of the Lewis Litigation and the McNeel Federal Litigation;

b)      That Markel was obligated to contribute a total sum of $2,000,000 from the Markel CGL Policy towards the settlement of the Lewis Litigation;

c)      That Markel was obligated to contribute a total sum of $5,000,000 from the Markel CGL and Umbrella Policies towards the settlement of the Lewis Litigation;

d)      That Markel is obligated to contribute $1,000,000 from the Markel CGL Policy towards the settlement of the McNeel Federal Litigation;

e)      That PIIC was only obligated to contribute $1,000,000 towards the settlement of the Lewis Litigation;

f)      That Markel shall, for the Lewis Litigation, pay $1,000,000 to PIIC representing the commercial general liability coverage limits of the Markel CGL Policy;

g)   That PIIC is not obligated to contribute to settlement of the McNeel Federal Litigation until and unless Markel pays $1,000,000 representing the professional liability coverage limits of the Markel CGL Policy; and

f)   Such other and further relief as the Court deems appropriate.

## COUNT II
### Essential and KADF vs. KA Broadway – Contractual Indemnification

61.   Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

62.   Paragraph 21.2 of the Franchise Agreement provides "Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against and from any and all claims arising either directly or indirectly from, as a result of, or in connection with the operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them."

63.   Essential and KADF paid $2,000,000 to settle the Underlying Litigation.

64.   Pursuant to the Franchise Agreement, Essential and KADF are entitled to indemnification from KA Broadway for the amounts paid to settle the Underlying Litigation.

65.   KA Broadway has breached its obligation of contractual indemnification by not fully indemnifying Essential and KADF for the amounts incurred to settle the Underlying Litigation.

66.   WHEREFORE, Plaintiffs Essential Brands, Inc. and Kiddie Academy Domestic Franchising, LLC request this Honorable Court enter judgment in their favor and against Defendant KA Broadway, LLC, d/b/a Kiddie Academy Pearland East in the amount of

18

$2,000,000 together with pre and post judgment interest, costs and such other relief as this Court deems appropriate.

## COUNT III
### Essential and KADF vs. Bullocks, Cory Bullock, Summer Bullock – Contractual Indemnification

67.    Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

68.    Paragraph 20.3 of the Franchise Agreement provides "Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against any and all claims arising directly or indirectly from, as a result of, or in connection with Franchisee's operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them."

69.    Essential and KADF have incurred fees and costs in defense of the McNeel Federal Litigation and may incur costs in payment of settlement or judgment in that case.

70.    Pursuant to the Franchise Agreement, Essential and KADF are entitled to indemnification from Bullocks and Mr. and Ms. Bullock for the costs incurred in defense of the McNeel Federal Litigation and any amounts paid to settle that case.

71.    Bullocks and Mr. and Ms. Bullock have breached their obligation of contractual indemnification by not fully indemnifying Essential and KADF for the amounts incurred in the McNeel Federal Litigation.

72.    WHEREFORE, Plaintiffs Essential Brands, Inc. and Kiddie Academy Domestic Franchising, LLC request this Honorable Court enter judgment in their favor and against Defendants Bullocks and Mr. and Ms. Bullock in an amount to be proven by evidence together

with pre and post judgment interest, costs and such other relief as this Court deems appropriate.

## COUNT IV
### PIIC v. KA Broadway – Equitable Subrogation

73.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

74.     KA Broadway, as the owner and operator of a childcare facility charged with the responsibility of the well-being of children such as the Minor, K.L., was under a duty to exercise a high degree of care for the safety and welfare of children in its facility.

75.     KA Broadway breached that duty of care on June 19, 2017, when the Minor suffered personal injury at KA Broadway's childcare facility.

76.     As a result of KA Broadway's negligence, PIIC made payment on behalf of its insureds, Essential and KADF, in the amount of $2,000,000 towards the settlement of the Underlying Litigation in accordance with the terms and conditions of the PIIC Policy.

77.     By virtue of the payment made on behalf of its insureds, and in accordance with the terms and conditions of the PIIC Policy, PIIC is legally, equitably, and contractually subrogated to the rights of its insureds to the extent of such payment.

78.     WHEREFORE, Plaintiff Philadelphia Indemnity Insurance Company requests this Honorable Court enter judgment in its favor and against Defendant KA Broadway, LLC, d/b/a Kiddie Academy Pearland East in the amount of $2,000,000 together with pre and post judgment interest, costs and such other relief as this Court deems appropriate.

## COUNT IV
### PIIC v. Bullocks, Cory Bullock, Summer Bullock – Equitable Subrogation

79.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

80.     Bullocks and Mr. and Ms. Bullock, as the owner and operator of a childcare facility charged with the responsibility of the well-being of children such as the Minor, S.M.M., was under a duty to exercise a high degree of care for the safety and welfare of children in its facility.

81.     KA Broadway breached that duty of care on August 27, 2018, when the Minor suffered personal injury and death at Bullocks' childcare facility.

82.     As a result of Bullocks' negligence, PIIC has made payment on behalf of its insureds, Essential and KADF, for costs and attorneys' fees in defense of the McNeel Federal Litigation in accordance with the terms and conditions of the PIIC Policy.

83.     By virtue of the payment made on behalf of its insureds, and in accordance with the terms and conditions of the PIIC Policy, PIIC is legally, equitably, and contractually subrogated to the rights of its insureds to the extent of such payment.

84.     WHEREFORE, Plaintiff Philadelphia Indemnity Insurance Company requests this Honorable Court enter judgment in its favor and against Defendants Bullocks and Mr. and Ms. Bullock in an amount to be proven by evidence together with pre and post judgment interest, costs and such other relief as this Court deems appropriate.

Margaret Fonshell Ward

Margaret Fonshell Ward (04586)
Alicia D. Stewart (29742)
DOWNS WARD BENDER HAUPTMANN & HERZOG, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
Phone:  410-584-2800
Fax:  410-584-2020
mward@downs-ward.com
adstewart@downs-ward.com
*Attorneys for Plaintiffs*
*Philadelphia Indemnity Insurance Company,*
*Essential Brands, Inc., and*
*Kiddie Academy Domestic Franchising, LLC*