IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILADELPHIA INDEMNITY     \*
 INSURANCE COMPANY

                                   \*

and

                                   \*

ESSENTIAL BRANDS, INC.

                                   \*

and

                                   \*

KIDDIE ACADEMY DOMESTIC
 FRANCHISING, LLC             \*

                                   \*       **Civil Action No.:  20-cv-00669-RDB**

   **Plaintiffs**

                                   \*

v.

                                   \*

MARKEL INSURANCE COMPANY

                                   \*

and

                                   \*

KA BROADWAY, LLC d/b/a KIDDIE
 ACADEMY PEARLAND EAST     \*

   **Defendants**             \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT
### AND DECLARATORY JUDGMENT

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs

Philadelphia Indemnity Insurance Company, Essential Brands, Inc., and Kiddie Academy

Domestic Franchising, LLC (collectively referred to as "Plaintiffs") bring this suit for Declaratory

Judgment against Defendants Markel Insurance Company and KA Broadway, LLC, d/b/a Kiddie

Academy Pearland East and state as follows:

**PARTIES**

1.      Philadelphia Indemnity Insurance Company ("PIIC") is an insurance company organized and existing in the Commonwealth of Pennsylvania.

2.      Essential Brands, Inc. ("Essential") is a Delaware corporation with its principal place of business in the State of Maryland.  Essential is the parent of Kiddie Academy Domestic Franchising, LLC.

3.      Kiddie Academy Domestic Franchising, LLC ("KADF") is a Delaware limited liability company with its principal place of business in the State of Maryland.

4.      Markel Insurance Company ("Markel") is an insurance company organized and existing in the Commonwealth of Virginia.

5.      KA Broadway, LLC, d/b/a Kiddie Academy Pearland East ("KA Broadway") is a limited liability company organized and existing in the State of Texas.

**JURISDICTION AND VENUE**

6.      Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction because the amount in controversy exceeds $75,000 and the parties have complete diversity of citizenship.

7.      Pursuant to 28 U.S.C. § 2201, the matter in controversy involves a declaration of the rights, duties, and obligations of the parties under insurance policies and other contracts.

8.      This Court is the proper venue for this dispute pursuant to Paragraph 27.2 of the Franchise Agreement between KADF and KA Broadway which states, "The parties agree that any cause of action by either party against the other must be filed in the United States District Court for the District of Maryland or the Circuit Court for Harford County, State of Maryland,

and the parties and all personal guarantors hereof do hereby waive all questions of personal and

subject matter jurisdiction or venue for the purpose of carrying out this provision…."

<h2 style="text-align:center">FACTS REGARDING PRIOR LITIGATION</h2>

9.      On or about November 7, 2013, KADF and KA Broadway entered into a Franchise

Agreement under which KADF granted KA Broadway the right to operate a Kiddie Academy

Child Care Learning Center in Pearland, Texas.

10.      Paragraph 14 of the Franchise Agreement required KA Broadway to procure:

> 14.2.1   Comprehensive general liability insurance, including, without limitation, personal injury, premises liability, errors and omissions, products/completed operations, fire and contractual liability in the amount of One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) in the aggregate.

> 14.2.2   Teachers' professional liability insurance in the amount of One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) in the aggregate, separate and apart from the comprehensive general liability insurance limits.

> 14.2.9   Umbrella liability insurance (commonly referred to as excess liability insurance) in the amount of no less than Three Million Dollars ($3,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate.

11.      Paragraph 21 of the Franchise Agreement provides:

> **21. INDEPENDENT CONTRACTOR; INDEMNIFICATION**

> **21.2  Indemnification**

> Nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty or representation on Franchisor's behalf, or to incur any debt or other obligation in Franchisor's name.  Franchisor will in no event assume liability for, or be deemed liable under this Agreement as a result of any such action by Franchisee; nor will Franchisor be liable by reason of any act or omission of Franchisee in its conduct in operating the Franchised

Business or for any claim or judgment arising from the operation of the Franchised Business. Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against and from any and all claims arising either directly or indirectly from, as a result of, or in connection with the operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them. This provision and all of its parts shall survive the termination or expiration of this Agreement.

12.     On or about June 4, 2019, Robert Lewis, Individually and as Next Friend of the Minor, K. L., filed a First Amended Petition in the District Court of Brazoria County, Texas against KA Broadway, Essential, and KADF arising out of an incident that occurred on June 19, 2017 (the "Incident"). Such lawsuit was styled *Robert Lewis, et al. v. KA Broadway, LLC, et al.*, Cause No. 93954-CV (the "Lewis Litigation").

13.     In the Lewis Litigation, the plaintiff alleged that the defendants were negligent and grossly negligent in actions or omissions that caused injury to a Minor, K.L.

14.     Specifically, the First Amended Petition and later discovery and filings made in the Lewis Litigation alleged and supported claims that K.L. was injured while participating in an art activity when she was in day care at a Kiddie Academy day care facility operated by KA Broadway.

15.     The allegations and evidence regarding the injury to K. L. were as follows:

a.     Essential and/or KADF developed a curriculum for its franchisees that included a "bubble art" activity. The curriculum included specific and detailed instructions on how the bubble art activity was to be conducted.

b.     The bubble art activity involved mixing non-toxic tempera paint with household dish soap and water to create a colored mix. Children then use drinking straws to blow bubbles in the mixture and place a piece of paper on the bubbles to create colored circles of paint.

c.      The day care staff at KA Broadway undertook the bubble art activity on June 19, 2017, with K.L. participating.

d.      A KA Broadway staff member prepared the mixture but, in an error, used industrial grade dishwashing detergent containing sodium hydroxide, instead of common household dish soap.

e.      K.L. ingested the mixture during the activity, which caused severe and permanent damage to her gastrointestinal tract.

f.      When the KA Broadway staff identified that K.L. had ingested the mixture, they did not seek emergency medical assistance or engage in first aid.

g.      The KA Broadway staff members who created the mixture and conducted the bubble art activity did not heed the instructions and warnings on the container of detergent used.

16.      Counsel for the plaintiff in the Lewis Litigation filed designations of expert testimony and other filings that described the causes of action against KA Broadway as follows:

a.      provided sodium hydroxide to K.L.;
b.      complied with instructions for the bubble art activity;
c.      failed to properly train employees;
d.      failed to adequately supervise employees;
e.      failed to follow policies and procedures regarding injuries to children;
f.      failed to follow first aid measures after injury;
g.      failed to heed warnings on industrial detergent;
h.      failed to heed warnings on material safety data sheet.

17.      Counsel for the plaintiff in the Lewis Litigation filed designations of expert testimony and other filings that described the causes of action against KADF and Essential as follows:

a.      negligently developed and provided dangerous instructions for the bubble art activity;
b.      failed to protect children's health when bubble art instructions were followed;
c.      failed to warn of dangers created by following the instructions for bubble art;
d.      retained control of how the bubble art activity would be conducted.

**THE MARKEL POLICIES**

18.     At the time of the Incident, Markel issued a Commercial General Liability Policy

of insurance to KA Broadway, Policy No. CCP20027298, with effective dates of December 16, 2016

to December 16, 2017, and with limits of liability of $1,000,000 in general liability coverage and

$1,000,000 in professional liability coverage (the "Markel CGL Policy").

19.     The Markel CGL Policy provides in relevant part as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE**
**LIABILITY**

1.  **Insuring Agreement**
    a.   We will pay those sums that the insured becomes legally
         obligated to pay as damages because of "bodily injury" or
         "property damage" to which this insurance applies.

                    *        *        *

    b. This insurance applies to 'bodily injury' and 'property
    damage' only if:

    (1) The 'bodily injury' or 'property damage' is caused by an
    'occurrence' that takes place in the 'coverage territory;' ...

                    *        *        *

**SECTION V – DEFINITIONS**

13.  "Occurrence" means an accident, including continuous or repeated
exposure to substantially the same general harmful conditions.

                    *        *        *

**SECTION   IV  –   COMMERCIAL   GENERAL   LIABILITY**
**CONDITIONS**

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. …

\* \* \*

### TEXAS PROFESSIONAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following changes apply only to the coverage provided by this endorsement.

**A.** The following is added to Section I – Coverages:

### MISCELLANEOUS PROFESSIONAL LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of injury arising out of a "wrongful act" of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies. …

**b.** This insurance applies to injury only if:

**(1)** The injury is caused by a "wrongful act" that takes place in the "coverage territory";

**(2)** The injury occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or received notice of a "wrongful act" or claim, knew that the injury had occurred, in whole or in part. …

\*       \*       \*

**D.** Section III – Limits of Insurance is replaced by the following:

**LIMITS OF INSURANCE**
**4.** The limits of insurance provided by this endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form.

\*       \*       \*

**F.** The following are added to the Definitions section:

"Wrongful act" means any actual or alleged negligent act, error or omission in the rendering or failure to render professional services to others out of your operations, including the furnishing of food, beverages, medications or appliances in connection with those operations.

20.     At the time of the Incident, Markel also issued an Umbrella Liability Policy of insurance to KA Broadway, Policy No. CCU20027298, with effective dates of December 16, 2016 to December 16, 2017, and with limits of liability of $3,000,000 (the "Markel Umbrella Policy").

21.     Essential and KADF are Additional Insureds under both Markel Policies.

**THE PIIC POLICIES**

22.     At the time of the Incident, PIIC issued a Commercial General Liability Policy of insurance to Essential and KADF, Policy No. PHPK1592227, with effective dates of December 31, 2016 to December 31, 2017, and with limits of liability of $1,000,000 (the "PIIC CGL Policy").

23.     At the time of the Incident, PIIC issued also a Commercial Umbrella Liability Policy of insurance to Essential and KADF, Policy No. PHUB567838, with effective dates of December 31, 2016 to December 31, 2017, and with limits of liability of $10,000,000 (the "PIIC Umbrella Policy").

## SETTLEMENT OF THE LEWIS LITIGATION

24.     On or about September 5, 2019, KA Broadway, Essential, and KADF agreed to settle the Lewis Litigation by paying a total sum of $6,000,000 to Mr. Lewis.

25.     To achieve that settlement, KA Broadway's insurer, Markel, contributed $4,000,000 toward the settlement on behalf of KA Broadway, KADF and Essential; while PIIC contributed $2,000,000 on behalf of Essential and KADF.

26.     Specifically, Markel contributed $1,000,000 in professional liability coverage from the Markel CGL Policy and the $3,000,000 policy limits from the Markel Umbrella Policy.  Markel did not contribute any of the limits of the general liability coverage from the Markel CGL Policy.

27.     PIIC contributed $1,000,000 in general liability coverage from the PIIC CGL Policy and $1,000,000 from the PIIC Umbrella Policy.

28.     A dispute has arisen regarding the amounts the insurers were obligated to contribute to the settlement of the Lewis Litigation.

29.     Plaintiffs contend that Markel failed to exhaust its policy limits under the CGL which was primary to all other policies.

30.     Specifically, Plaintiffs contend that Markel was required to contribute both $1,000,000 in professional liability coverage and $1,000,000 in general liability coverage from the Markel CGL Policy.

31.     Plaintiffs allege that the allegations and evidence in the Lewis Litigation triggered coverage under the Commercial General Liability Coverage Form, requiring payment of the general liability coverage limit of $1,000,000 on the basis, *inter alia*, of the following claims, which were accidents within the definition of an occurrence:

a.      the KA Broadway staff member made an error in choosing the industrial dishwashing detergent instead of common household dish soap;

b.      KA Broadway did not properly supervise its employees regarding choosing the material to be used for the bubble art activity;

c.      the KA Broadway staff did not identify that K.L. might need first aid or medical attention for the ingestion of the mixture;

d.      the KA Broadway staff did not read the label warnings, material safety data sheet, or other information about the detergent;

e.      KADF and Essential were liable in agency for the actions and omissions of KA Broadway.

32.     The actions and omissions of KA Broadway, imputed by alleged agency to KADF and Essential, both alleged and shown in evidence in the Lewis Litigation, are acts of negligence that are insured under the Markel policy Commercial General Liability Form.

33.     Some of the allegations and evidence in the Lewis Litigation support coverage under the Texas Professional Liability Coverage Form, as wrongful acts, as defined by the Markel policy.

34.     The wrongful acts of both KA Broadway and KADF and Essential include:

a.      failure to train employees;
b.      failure to follow policies and procedures regarding injuries to children;
c.      development of the bubble art activity as a part of the curriculum;
d.      failure to warn of dangers created by the bubble art activity;
e.      failure to identify the dangers in the bubble art activity and address the instructions;
f.      determining how the bubble art activity was to be conducted;
g.      conducting the bubble art activity without considering or attending to its dangers.

35.     Markel admits that the Texas Professional Liability Coverage Form was triggered by the allegations and evidence in the Lewis Litigation.

36.     Markel wrongfully failed to acknowledge that the Commercial General Liability Coverage Form was triggered by the allegations and evidence in the Lewis Litigation.

37.     If Markel had contributed a total of $5,000,000 towards the settlement, made up of $1,000,000 in general liability coverage, $1,000,000 in professional liability coverage, and its $3,000,000 in umbrella coverage, as Plaintiffs contend it was obligated to, PIIC would not have had to contribute $1,000,000 from the PIIC Umbrella Policy.

38.     The Markel CGL Policy provides "The limits of insurance provided by this [Texas Professional Liability Coverage] endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form."  *See* TEXAS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT, D. Limits of Insurance, 4.

39.     Markel disputes that it is obligated under the Markel CGL Policy to contribute $1,000,000 in general liability coverage towards the settlement of the Lewis Litigation.

40.     There exists an actual, justiciable controversy as to whether Markel is obligated under the Markel CGL Policy to contribute $1,000,000 in general liability coverage towards the settlement.

41.     KA Broadway failed to meet its contractual obligation to Essential and KADF to provide $2,000,000 in primary general liability and professional liability coverage to settle the Lewis Litigation.

**COUNT I**
**Declaratory Judgment - Markel was obligated under the Markel CGL Policy**
**to contribute $1,000,000 in general liability coverage and $1,000,000 in professional liability**
**coverage toward the settlement of the Lewis Litigation.**

42.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

43.     The Markel CGL Policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  *See* COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement.

44.     The Markel CGL Policy provides: "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows: a. Primary Insurance. This insurance is primary except when Paragraph b. below applies."  *See* COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, a. Primary Insurance.

45.     None of the conditions of Paragraph b. applies to change the status of the Markel CGL Policy as primary.

46.     The Markel CGL Policy provides: "The limits of insurance provided by this [Texas Professional Liability Coverage] endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form."  *See* TEXAS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT, D. Limits of Insurance, 4.

47.     The Markel Policy, along with the facts as alleged and shown in the Lewis Litigation, require that both the professional liability coverage limits and the commercial general liability coverage limits should have been paid in settlement of the Lewis Litigation.

WHEREFORE, Plaintiffs Philadelphia Indemnity Insurance Company, Essential Brands, Inc., and Kiddie Academy Domestic Franchising, LLC request this Honorable Court enter judgment in their favor and against Defendants Markel Insurance Company and KA Broadway, LLC, d/b/a Kiddie Academy Pearland East and declare the following:

a)      That both the professional liability coverage and general liability coverage limits of the Markel CGL Policy must be paid in settlement of the Lewis Litigation;

b)      That Markel was obligated to contribute a total sum of $2,000,000 from the Markel CGL Policy toward the settlement of the Lewis Litigation;

c)      That Markel was obligated to contribute a total sum of $5,000,000 from the Markel CGL and Umbrella Policies toward the settlement of the Lewis Litigation;

e)      That PIIC was only obligated to contribute $1,000,000 towards the settlement of the Lewis Litigation;

f)      That Markel shall, for the Lewis Litigation, pay $1,000,000 to PIIC representing the commercial general liability coverage limits of the Markel CGL Policy; and

f)      Such other and further relief as the Court deems appropriate.

## COUNT II
### Essential and KADF vs. KA Broadway – Contractual Indemnification

48.      Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

49.      Paragraph 21.2 of the Franchise Agreement provides "Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against and from any and all claims arising either directly or indirectly from, as a result

13

of, or in connection with the operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them."

50.     Essential and KADF paid $2,000,000 to settle the Lewis Litigation.

51.     Pursuant to the Franchise Agreement, Essential and KADF are entitled to indemnification from KA Broadway for the amounts paid to settle the Lewis Litigation.

52.     KA Broadway has breached its obligation of contractual indemnification by not fully indemnifying Essential and KADF for the amounts incurred to settle the Lewis Litigation.

WHEREFORE, Plaintiffs Essential Brands, Inc. and Kiddie Academy Domestic Franchising, LLC request this Honorable Court enter judgment in their favor and against Defendant KA Broadway, LLC, d/b/a Kiddie Academy Pearland East in the amount of $2,000,000 together with pre and post judgment interest, costs and such other relief as this Court deems appropriate.

**COUNT III**
**PIIC v. KA Broadway – Equitable Subrogation**

53.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

54.     KA Broadway, as the owner and operator of a childcare facility charged with the responsibility of the well-being of children such as the Minor, K.L., was under a duty to exercise a high degree of care for the safety and welfare of children in its facility.

55.     KA Broadway breached that duty of care on June 19, 2017, when K.L. suffered injury at KA Broadway's childcare facility.

56.     As a result of KA Broadway's negligence, PIIC made payment on behalf of its

insureds, Essential and KADF, in the amount of $2,000,000 towards the settlement of the Lewis

Litigation in accordance with the terms and conditions of the PIIC Policy.

57.     By virtue of the payment made on behalf of its insureds, and in accordance with

the terms and conditions of the PIIC Policy, PIIC is legally, equitably, and contractually

subrogated to the rights of its insureds to the extent of such payment.

WHEREFORE, Plaintiff Philadelphia Indemnity Insurance Company requests this

Honorable Court enter judgment in its favor and against Defendant KA Broadway, LLC, d/b/a

Kiddie Academy Pearland East in the amount of $2,000,000 together with pre and post judgment

interest, costs and such other relief as this Court deems appropriate.


/s/ Margaret Fonshell Ward
Margaret Fonshell Ward (04586)
Alicia D. Stewart (29742)
DOWNS WARD BENDER HAUPTMANN & HERZOG, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
Phone:  410-584-2800
Fax:  410-584-2020
mward@downs-ward.com
adstewart@downs-ward.com
*Attorneys for Plaintiffs*
*Philadelphia Indemnity Insurance Company,*
*Essential Brands, Inc., and*
*Kiddie Academy Domestic Franchising, LLC*


## CERTIFICATE OF SERVICE

I CERTIFY that on this 12th day of January, 2021, a copy of this Second Amended

Complaint was electronically filed using the court's CM/ECF system on all counsel of record.

_Margaret Fonshell Ward_
Margaret Fonshell Ward