**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **PHILADELPHIA INDEMNITY** | * |
| **INSURANCE COMPANY,** *et al.*, | |
| | * |
| **Plaintiffs,** | |
| | * |
| **v.** | **Civil Action No. RDB-20-0669** |
| | * |
| **MARKEL INSURANCE** | |
| **COMPANY,** *et al.*, | |
| | * |
| **Defendants.** | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

This case involves an ongoing dispute between a daycare franchisor and franchisee and their respective insurance companies, Philadelphia Indemnity Insurance Co. ("Philadelphia Indemnity") and Markel Insurance Company ("Markel"). In 2019, both the franchisor and franchisee were sued for an incident involving the serious injury of a child at the franchisee's daycare center. That litigation settled, and Philadelphia Indemnity and Markel each paid certain amounts on behalf of their insureds. In this case, the parties now dispute whether Markel paid a sufficient portion of the settlement amount on behalf of its insured, the daycare franchisee. On November 18, 2020, this Court conducted a virtual motions hearing in this case.[1] This Court granted in part and denied in part motions in connection with the First Amended Complaint. (ECF Nos. 5, 17.) The Plaintiffs were granted leave to filed a Second Amended Complaint. (ECF No. 34.)

---

[1] The virtual hearing was conducted pursuant to Standing Orders 2021-01 and 2021-04 in light of the reduction in operations due to the COVID-19 pandemic.

Accordingly, on January 12, 2021, Plaintiffs Philadelphia Indemnity, Kiddie Academy Domestic Franchising, LLC ("KADF"), and KADF's parent company, Essential Brands, Inc. ("Essential"), filed the now operative three-count Second Amended Complaint against Markel and the daycare franchisee, KA Broadway LLC d/b/a Kiddie Academy Pearland East ("KA Broadway"). (*See* Second Amended Complaint, ECF No. 37.)  In Count I, all three Plaintiffs seek declaratory judgment that Markel was specifically required to pay an additional $1,000,000 toward the settlement of the underlying litigation.  In Count II, KADF and Essential, the franchisor and its parent company, seek contractual indemnification from KA Broadway, its franchisee, for the amount Philadelphia Indemnity was required to pay on their behalf toward the settlement.  In Count III, Philadelphia Indemnity asserts a claim for equitable subrogation against KA Broadway.  Defendants Markel and KA Broadway have each filed motions seeking dismissal of the claims against them on separate grounds.  (ECF Nos. 40, 48.)  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, Defendant KA Broadway's Motion to Dismiss, or in the Alternative for Summary Judgment (ECF No. 40) is DENIED.  Defendant Markel's Motion to Dismiss or Stay as Premature (ECF No. 48) is also DENIED.

## BACKGROUND

On March 12, 2020, Plaintiffs, Philadelphia Indemnity and KADF and its parent company Essential, filed suit against Markel and its insureds, Bullocks Bright Beginnings, LLC and Corey and Summer Bullock (collectively the "Bullocks"), and KA Broadway.  (*See* Amended Complaint, ECF No. 5.)  In the original and First Amended Complaint, the Plaintiffs sought declaratory judgment that Markel owed additional amounts in the settlement

of the suit involving KA Broadway, referred to as the *Lewis* litigation, and that Markel would owe a certain amount in an ongoing suit involving the Bullocks, referred to as the *McNeel* litigation, when that suit was eventually resolved.  (ECF Nos. 1, 5.)

On November 18, 2020, this Court held a Motions Hearing in which it heard arguments of counsel related to Defendant Markel's Motion to Dismiss (ECF No. 17), and ultimately this Court dismissed the Plaintiffs' claims related to *McNeel* litigation.  (ECF No. 34.)  This Court held that any decision on the issue of whether Markel must pay additional amounts under the Bullock's commercial general liability policy with Markel would be premature due to the ongoing nature of the underlying litigation.  (*Id.*)  Accordingly, the Bullocks were terminated as parties in this case.   With respect to the *Lewis* litigation, this Court held that the Plaintiffs' then-operative Amended Complaint did not adequately plead facts sufficient for this Court to determine whether there was a legal issue that could be decided by declaratory judgment at that time, and, therefore, granted leave to the Plaintiffs to filed a Second Amended Complaint. (*Id.*)

On January 12, 2021, the Plaintiffs filed their Second Amended Complaint (ECF No. 37).  The Second Amended Complaint alleges that on or about November 7, 2013, Plaintiff KADF and Defendant KA Broadway entered into a Franchise Agreement under which KADF granted KA Broadway the right to operate a Kiddie Academy Child Care Learning Center in Pearland, Texas.  (ECF No. 37 ¶ 9.)  Paragraph 14 of the Franchise Agreement required KA Broadway to procure:

1) Comprehensive general liability insurance in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate (Franchise Agreement ¶ 14.2.1, ECF No. 40-2.)

2) Teachers' professional liability insurance in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate "separate and apart from the comprehensive general liability insurance limits" (*Id.* ¶ 14.2.2.)

3) Umbrella liability insurance ("excess liability insurance") in the amount of no less than $3,000,000 per occurrence and $3,000,000 in the aggregate (*Id.* ¶ 14.2.9.)

(ECF No. 37 ¶ 10.)  The Agreement also included a provision related to the franchisee's duty to indemnify the franchisor.  Paragraph 21 of the Franchise Agreement provided:

> Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against and from any and all claims arising either directly or indirectly from, as a result of, or in connection with the operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them.

(ECF No. 40-2 ¶ 21.)

On or about October 27, 2017, Robert Lewis, individually and as a next friend for the minor child K.L., filed a lawsuit in the District Court of Brazoria County, Texas, against KA Broadway, KADF, and Essential.  (ECF No. 37 ¶ 12.)  *See Robert Lewis, et al. v. KA Broadway, LLC, et al.*, No. 93954-CV.  In that case, plaintiff Lewis alleged that the defendants were negligent and grossly negligent in actions or omissions that caused injury to K.L., who was injured while participating in an art activity when she was in day care at the facility operated by KA Broadway.  (*Id.* ¶ 14.)  Lewis' allegations and later discovery and filings made in that case revealed that Essential and/or KADF developed a curriculum for its franchisees that included a "bubble art" activity which involved mixing non-toxic tempera paint with household dish soap and water to create a colored mix.  (*Id.* ¶ 15.)  Children were supposed to blow bubbles into the mixture using drinking straws and then place a piece of paper on the bubbles to create colored circles of paint.  (*Id.*)  On June 19, 2017, a KA Broadway staff

4

member prepared the mixture, but used industrial grade dishwashing detergent containing sodium hydroxide instead of a common household dish soap. (*Id.*) While participating in this art activity at the KA Broadway facility, K.L. ingested some of the detergent and paint mixture, which caused severe and permanent damage to her gastrointestinal tract. (*Id.*) KA Broadway staff did not seek emergency medical assistance or engage in first aid. (*Id.*)

At the time of the *Lewis* lawsuit, KADF and Essential were insured directly by Philadelphia Indemnity under a Commercial General Liability Policy with limits of liability of $1,000,000, as well as a Commercial Umbrella Liability Policy with limits of liability of $10,000,000. (ECF No. 37 ¶ 22-23.) KA Broadway was insured by Markel under a Commercial General Liability Policy with a limit of $1,000,000, as well as an Umbrella Liability Policy with a limit of $3,000,000. (*Id.* at ¶ 18, 20.)

The Commercial General Liability Policy issued by Markel to KA Broadway included the Texas Child Care Commercial Liability Enhancement, which modified the insurance provided under the Commercial General Liability Coverage form (the "General Liability form"). (Exh. A at Form No. MGL 1205-TX 01 14, ECF No. 48-2.) This enhancement included a provision that stated who would be an "additional insured" under the Policy. Section M provided that additional insureds included individuals or organizations to whom the insured was specifically required by contract to provide insurance. (*Id.*) Section M also provided some exceptions to that general rule, including one which stated, "This insurance does not apply to any person or organization included as an insured by an endorsement issued by us or otherwise made part of this insurance." (*Id.*)

The Commercial General Liability Policy was also included a Texas Professional Liability Coverage endorsement (the "Professional Liability Endorsement"). (ECF No. 37 ¶ 19.) The Professional Liability Endorsement modified the General Liability form, and provided:

> The following changes apply only to the coverage provided by this endorsement.
>
> **A.** The following is added to Section I – Coverages:
>
> **MISCELLANEOUS PROFESSIONAL LIABILITY**
>
> **1.** Insuring Agreement:
>    **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of injury arising out of a "wrongful act" of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies . . .
>        . . . .
>
> **D.** Section III – Limits of Insurance is replaced by the following:
>
> **LIMITS OF INSURANCE**
>
> **4.** The limits of insurance provided by this endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form.

(Exh. A. at Form No. MGL 1258-TX 01 16., ECF No. 48-2.) The Endorsement also included a provision which stated that "coverage provided by this endorsement does not provide any duplication or overlap of coverage for the same claim or 'suit.'" (*Id.*) Another section of the Endorsement specifically addressed additional insureds, noting that KA Broadway's "franchisor" was added as an additional insured with some limitations on coverage. (Exh. A. at Form No. MGL 1258-TX 01 17, ECF No. 48-2.)

On or about September 5, 2019, KA Broadway, Essential, and KADF agreed to settle the underlying *Lewis* litigation by paying a total sum of $6,000,000 to Mr. Lewis. (*Id.* ¶ 34.) To

achieve this settlement, Markel paid $1,000,000 in professional liability coverage under the Commercial General Liability Policy issued to KA Broadway; and $3,000,000 from the Umbrella Policy issued to KA Broadway. (*Id.* ¶ 26.) Philadelphia Indemnity paid $1,000,000 in general liability coverage under the Commercial General Liability Policy issued to KADF and Essential; and $1,000,000 under the Umbrella Policy issued to KADF and Essential. (*Id.* ¶ 27.) A two-page Settlement Agreement included the following provisions:

> In consideration for the Settlement Agreement, KA Broadway LLC d/b/a Kiddie Academy Pearland East will release Essential Brands, Inc. and Kiddie Academy Domestic Franchising LLC from any and all causes of action that are pending in the Litigation. Further, Essential Brands, Inc. and Kiddie Academy Domestic Franchising LLC agree to release KA Broadway LLC d/b/a/ Kiddie Academy Pearland East from any and all claims or causes of action they may have sounding in common law or contractual indemnification or subrogation, but only to the extent there is no insurance coverage available to cover said claims.

> The scope of the mutual releases among the Parties shall expressly exclude the claim by Philadelphia [Indemnity] against [Markel] that the primary insurance policy [Markel] issued to its named insured, KA Broadway LLC, and under the Essential Brands Inc. is an Additional Insured, affords $2,000,000 in liability coverage (including all available coverage for comprehensive general liability and professional liability under that policy), that applies to the claims and causes of action the Plaintiffs brought against the various Defendants in the Litigation, and not solely $1,000,000 in professional liability coverage, as [Markel] maintains. Philadelphia [Indemnity] shall have the right to pursue a direct claim against Markel for this coverage dispute concerning the applicable primary policy limits, and neither the mutual releases in the Settlement Agreement nor any statutory or common law shall operate to waive, compromise, or prejudice such claim by Philadelphia [Indemnity].

> [Markel] shall have the right to pursue any claims and defenses in any legal proceeding instituted by Philadelphia [Indemnity], including the claim or defense that, regardless of any determination regarding the applicable limits available for the underlying case under the Markel primary policy, Philadelphia's $2,000,000 settlement payment reflects a fair and reasonable allocation of the settlement to Philadelphia. The mutual releases in this Settlement Agreement shall not operate to waive, compromise, or prejudice such claims or defenses by Markel.

(Exh. 3, ECF No. 40-4.)

Following the settlement, all parties to this suit also voluntarily entered a Release

Agreement which set forth "material terms regarding agreements and reservation of rights

related to a settlement" of the *Lewis* case.  (ECF No. 40-3 at 1.)  The Release Agreement stated

in part:

> This release by Kiddie Academy Domestic Franchising, LLC and Essential
> Brands, Inc. of claims against KA Broadway LLC d/b/a Kiddie Academy
> Pearland East is effective only insofar as and to the extent that KA Broadway
> LLC d/b/a Kiddie Academy Pearland East does not have insurance coverage
> available to indemnify KA Broadway LLC d/b/a Kiddie Academy Pearland
> East from claims made under common law, contractual indemnification,
> and/or subrogation. Kiddie Academy Domestic Franchising, LLC and
> Essential Brands, Inc. retain all rights arising in common law, contractual
> indemnification, and/or subrogation but agree that their sole remedy for such
> claims will be such insurance benefits that are available to KA Broadway LLC
> d/b/a Kiddie Academy Pearland East.
>
> . . . .
>
> Philadelphia shall have the right to pursue a direct claim against Markel for this
> coverage dispute concerning the applicable primary policy limits, and neither
> the mutual releases in this Agreement between the Plaintiffs and the various
> Defendants in the Lawsuit, nor any statutory or common law shall operate to
> waive, compromise, or prejudice such claim by Philadelphia.

(ECF No. 40-3 at 2.)

The Plaintiffs now contend that Markel failed to exhaust its policy limits under the

Commercial General Liability Policy issued to KA Broadway.  (*Id.* ¶ 37.)  Specifically, Plaintiffs

contend that Markel was required to contribute both $1,000,000 in professional liability

coverage, as well as $1,000,000 in general liability coverage.  (*Id.* ¶ 38.)  As noted above, the

Franchise Agreement with KA Broadway required the company, *inter alia*, to pursue

comprehensive general liability insurance in the amount of $1,000,000 "per occurrence" and

$2,000,000 in aggregate.  (*Id.* ¶ 10.)  Plaintiffs contend that the actions and omissions of KA Broadway, imputed by alleged agency to KADF and Essential, both alleged and shown in evidence in the *Lewis* litigation, are acts of negligence that are insured under the Markel Policy's General Liability form.  (*Id.* ¶ 32.)  Plaintiffs also allege that some of the allegations and evidence in the *Lewis* litigation support coverage under the Professional Liability Endorsement, as "wrongful acts," defined in the Markel policy.  (*Id.* ¶ 33.)

According to the Plaintiffs, Markel admits that the Professional Liability Endorsement was triggered by the allegations and evidence in the *Lewis* litigation but "wrongfully failed to acknowledge" that the General Liability form was also triggered by the allegations and evidence in the *Lewis* litigation.  (*Id.* ¶¶ 35-36.)  They allege that if Markel had contributed a total of $5,000,000 towards the settlement, made up of $1,000,000 in general liability coverage, $1,000,000 in professional liability coverage, and its $3,000,000 in umbrella coverage, Philadelphia Indemnity would not have had to contribute $1,000,000 from its Umbrella Policy issued to KADF and Essential.  (*Id.* ¶ 37.)  Plaintiffs KADF and Essential also assert that KA Broadway failed to meet its contractual obligation to provide them with $2,000,000 in primary general liability and professional liability coverage to settle the *Lewis* litigation.  (*Id.* ¶ 41.)

On January 19, 2021, KA Broadway filed a Motion to Dismiss or in the Alternative for Summary Judgment.  (ECF No. 40.)  On March 4, 2021, Defendant Markel filed its own Motion to Dismiss, or Alternatively, Dismiss or Stay as Premature.  (ECF No. 48.)

## STANDARD OF REVIEW

### I.    Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016).  However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  In addition, a court may "consider a document submitted by the movant

that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

In Maryland, "an insurance policy is a contract and is to be read as any other contract," and "words of an insurance policy are to be given their ordinary meaning." *Warfield–Dorsey Co., Inc. v. Travelers Cas. & Sur. Co. of Illinois*, 66 F. Supp. 2d 681, 685 (D. Md. 1999). "[W]hen deciding the issue of coverage under an insurance policy the primary principle of construction is to apply the terms of the insurance contract." *Id.* Under Maryland law, "an insurer has a duty to defend its insured if there is a potentiality that the claim may be covered by the policy." *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 619-20 (Md. 1995).

## II.     Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

In the specific context of a "claim for breach of an insurance policy, 'the insured bears the burden of proving every fact essential to his or her right to recovery, ordinarily by a preponderance of the evidence.'" *See Jowite Ltd. P'ship v. Federal Ins. Co.*, No. DLB-18-2413, 2020 WL 4748544, at *5 (D. Md. Aug. 17, 2020) (quoting *Gen. Ins. Co. v. Walter E. Campbell Co.*, 214 F. Supp. 3d 578, 597 (D. Md. 2017) (citing *N. Am. Acc. Ins. Co. v. Plummer*, 176 A. 466, 469 (Md. 1935), *aff'd sub nom. Gen. Ins. Co. v. United States Fire Ins. Co.*, 886 F.3d 346 (4th Cir. 2018), as amended (Mar. 28, 2018))). "If the insured meets its burden and the 'insurer [has] relie[d] upon a policy exclusion to deny coverage, the insurer bears the burden of proving that the exclusion applies.'" *Id.* (quoting *Ellicott City Cable, LLC v. Axis Ins. Co.*, 196 F. Supp. 3d 577, 584 (D. Md. 2016) (citing *Finci v. Am. Cas. Co.*, 593 A.2d 1069, 1087 (Md. 1991))).

## ANALYSIS

### I.    Claims against KA Broadway

The Amended Complaint asserts two different claims against Defendant KA Broadway. (ECF No. 37.) In Count II, Plaintiffs Essential and KADF assert that KA Broadway breached the terms of the Franchise Agreement between the parties by requiring

Essential and KADF to pay $2,000,000 towards the settlement of the *Lewis* litigation.  (*Id.* ¶¶ 49-50.)  Essential and KADF contend they are entitled to indemnification from KA Broadway for those amounts paid towards the settlement.  (*Id.* ¶ 52.)  In Count III, Plaintiff Philadelphia Indemnity asserts a claim for equitable subrogation, claiming that as a result of KA Broadway's own negligence, it made payments on behalf of its insureds, Essential and KADF, towards the *Lewis* settlement.  (*Id.* ¶ 56.)  Philadelphia Indemnity claims that by virtue of that payment made on behalf of its insureds, and in accordance with the terms and conditions of its policies with those insureds, Philadelphia Indemnity is "legally, equitably, and contractually subrogated to the rights of it insureds to the extent of such payment."  (*Id.* ¶ 57.)

## A.  Indemnification Claim by KADF and Essential (Count II)

Defendant KA Broadway asserts that the Plaintiffs' claim in Count II is barred by mutual assent due to the terms of the Release Agreement signed by representatives for Essential, KADF, and KA Broadway in January 2020.  As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies.  *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  Maryland generally adheres to the rule of *lex loci contractus*, under which the construction of a contract is determined by the law of the state where the contract was made.  *See Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992).  A contract is generally deemed to be "made" in the state where the "last act necessary" to form the contract took place.  *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998).  "Generally, that last act is a party's signature."  *Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) (citing *Solid Concepts, LLC v. Fallen Soldiers, Inc.*, DKC-09-2377, 2010 WL 3123269, at *1

n.1 (D. Md. Aug. 9, 2010) (interpreting Maryland law)).  In this case, the Release Agreement was signed in Maryland.  (*See* ECF No. 40-3.)  This Court will, accordingly, apply Maryland law.

Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 594-95 (D. Md. 2018) (quoting *Grimes v. Gouldmann*, 157 A.3d 331, 334-35 (Md. Ct. Spec. App. 2017) (citation and internal quotation marks omitted)).  "'The cardinal rule of contract interpretation is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013) (alteration omitted) (quoting *Tomran, Inc. v. Passano*, 891 A.2d 336, 344 (Md. 2006)).  To determine the parties' intentions, courts look first to the written language of the contract. *Walton v. Mariner Health of Maryland, Inc.*, 894 A.2d 584, 594 (Md. 2006) ("Generally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement.").

As a first step in this analysis, this Court must "determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated." *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d 106, 142 (Md. Ct. Spec. App. 1996), *aff'd*, 695 A.2d 153 (Md. 1997).  Critical to this inquiry in an examination of "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *CX Reinsurance Co. Ltd. v. Heggie*, ELH-15-1674, 2016 WL 6025488, at *6 (D. Md. Oct. 14, 2016) (quoting *United Servs. Auto. Ass'n v. Riley*, 899 A.2d 819, 833 (Md. 2006)).  However, this Court need not consult extrinsic evidence when the text of a contract is unambiguous. *DIRECTV, Inc. v. Mattingly*, 829 A.2d

626, 630 (Md. 2003) (citations omitted); *see Clendenin Bros. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 393 (Md. 2006). A contract is ambiguous only if "when read by a reasonably prudent person, it is susceptible [to] more than one meaning." *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (citation omitted).

> As provided above, the Release Agreement specifically stated the following:
>
> This release by Kiddie Academy Domestic Franchising, LLC and Essential Brands, Inc. of claims against KA Broadway LLC d/b/a Kiddie Academy Pearland East is effective only insofar as and to the extent that KA Broadway LLC d/b/a Kiddie Academy Pearland East does not have insurance coverage available to indemnify KA Broadway LLC d/b/a Kiddie Academy Pearland East from claims made under common law, contractual indemnification, and/or subrogation. **Kiddie Academy Domestic Franchising, LLC and Essential Brands, Inc. retain all rights arising in common law, contractual indemnification, and/or subrogation but agree that their sole remedy for such claims will be such insurance benefits that are available to KA Broadway LLC d/b/a Kiddie Academy Pearland East.**

(ECF No. 40-3 at 2 (emphasis added).) KA Broadway asserts that the highlighted language in this excerpt "clearly shows that the specific intent of the parties following the Lewis Litigation settlement was that KADF and Essential Brand's **sole remedy** for all claims [would] be **only** the insurance benefits that are available to KA Broadway." (ECF No. 40-1 at 5 (emphasis in original).) Essentially, KA Broadway argues that this language bars Essential and KADF's claim in Count II. However, as the Plaintiffs aptly note, "KA Broadway improperly conflates the issue of its breach of contract with the *remedy* that is available for that breach." (ECF No. 45 at 2 (emphasis added) (citing *Hamlin Mach. Co. v. Holtite Mfg. Co.*, 78 A.2d 450, 452 (Md. 1951) ("The cause of action is distinct from the 'remedy,' which is simply the means by which the cause of action is satisfied.")). The Plaintiffs' claim for contractual indemnification was expressly reserved by the plain language of the Release Agreement. KADF and Essential must

now plead and prove that KA Broadway breached its contractual obligation to indemnify them in order to recover.  If they are successful, the plain meaning of the Release Agreement is that the source of payment for that contractual breach is limited to the available insurance benefits. Accordingly, the Release Agreement does not require dismissal of Count II as KA Broadway asserts.

### B. Equitable Subrogation Claim by Philadelphia Indemnity (Count III)

With respect to Philadelphia Indemnity's claim for equitable subrogation against KA Broadway, KA Broadway claims that the language of both the Settlement Agreement and the Release Agreement by which Philadelphia Indemnity retained the right to bring a future action against Markel suggest a clear intent of the parties that Philadelphia Indemnity would waive its right to bring a future action against KA Broadway.  (ECF No. 40-1 at 6.)  As provided above, the Settlement Agreement stated in part:

> The scope of the mutual releases among the Parties shall expressly exclude the claim by Philadelphia [Indemnity] against [Markel] that the primary insurance policy [Markel] issued to its named insured, KA Broadway LLC, and under the Essential Brands Inc. is an Additional Insured, affords $2,000,000 in liability coverage (including all available coverage for comprehensive general liability and professional liability under that policy), that applies to the claims and causes of action the Plaintiffs brought against the various Defendants in the Litigation, and not solely $1,000,000 in professional liability coverage, as [Markel] maintains.  **Philadelphia [Indemnity] shall have the right to pursue a direct claim against Markel for this coverage dispute concerning the applicable primary policy limits, and neither the mutual releases in the Settlement Agreement nor any statutory or common law shall operate to waive, compromise, or prejudice such claim by Philadelphia [Indemnity].**

(ECF No. 40-4 (emphasis added).)  The Release Agreement then stated in part:

> Philadelphia [Indemnity] shall have the right to pursue a direct claim against Markel for this coverage dispute concerning the applicable primary policy limits, and neither the mutual releases in this Agreement between the Plaintiffs and the various Defendants in the Lawsuit, nor any statutory or common law shall

operate to waive, compromise, or prejudice such claim by Philadelphia [Indemnity].

(ECF No. 40-3.)  KA Broadway asserts that "[h]ad Philadelphia Indemnity intended to retain the right to bring a future action against KA Broadway, it undoubtedly would have included such language in one or both of the agreements signed by the parties when the Lewis case was settled with the Plaintiffs."  (ECF No. 40-1 at 6.)

Waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right."  *Rubinstein v. Jefferson Nat'l Life Ins. Co.*, 302 A.2d 49, 52 (Md. 1973) (citations omitted).  As the Maryland Court of Appeals has explained, "[w]hether waiver exists in a given case is normally a question for the trier of fact," as "the determination of its existence *vel non* turns on the intent of the party ostensibly waiving the right, a state of mind which is to be derived from the facts and circumstances surrounding the purported relinquishment*." St. Paul Fire & Marine Ins. Co. v. Molloy*, 433 A.2d 1135, 1138 (Md. 1981) (citing *Rubinstein*, 302 A.2d at 53); *Fidelity & Cas. Co. v. Riley*, 178 A. 250, 254 (Md. 1935); *Continental Ins. Co. v. Burns*, 125 A. 232, 234-35 (Md. 1924)).  The only facts available to the Court at this time are that the Settlement Agreement and Release Agreement included express provisions that Philadelphia Indemnity would retain a right to bring an action against Markel but those agreements did not include similar provisions for the other parties involved in the *Lewis* litigation.  On the current record, this Court cannot make any determination as to whether, in including provisions expressly retaining a right with respect to one party, the parties to these contracts intended that Philadelphia Indemnity would release all claims against any other parties involved in this matter.

## II.     Claim against Markel (Count I)

The Plaintiffs' claim against Defendant Markel in this case comes in the form of a request for declaratory judgment. The federal Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a). Thus, this Court considers three factors in determining whether to grant declaratory relief:

> (1) the complaint must allege an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

> (2) the court must possess an independent basis for jurisdiction over the parties; and

> (3) the court must decide whether to exercise its discretion to determine or dismiss the action.

*Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.,* No. DKC-06-3177, 2010 WL 1328538, at *6 (D. Md. March 29, 2010). *See A.L. Mechling Barge Lines v. United States,* 368 U.S. 324, 331 (1961) (whether to grant declaratory relief is a matter of the Court's discretion); *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 923 (D.C. Cir. 1980) (same). As this Court has explained, "in determining whether to exercise its discretion to grant declaratory relief, the Court should consider '(1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue; or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *White Marlin Open, Inc. v. Heasley*, No. RDB-16-3105, 2017 WL 467733, at *3 (D. Md. Feb. 3, 2017) (quoting *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, No. PWG-09-1201, 2010 WL 2367390, at *4 (D. Md. June 9, 2010), *aff'd,* 442 Fed. App'x 66 (4th Cir. 2011)).

In Count I of the Second Amended Complaint, Plaintiffs seeks declaratory judgment on the issue of whether Defendant Markel was obligated under its policy with KA Broadway to contribute $1,000,000 in general liability coverage in addition to the $1,000,000 it paid in professional liability coverage toward the settlement of the *Lewis* litigation.  (ECF No. 37 ¶¶ 42-47.)  The Plaintiffs assert that the language of the Markel Policy issued to KA Broadway, as well as the facts as alleged and shown in the *Lewis* litigation require that both professional liability coverage limits and the general liability coverage limits should have been paid in the settlement.  (*Id.* ¶ 46.)  Specifically, Plaintiffs point to the language included in the Texas Professional Liability Coverage Endorsement stating, "[t]he limits of insurance provided by this [Texas Professional Liability Coverage] endorsement are *in addition to* the limits of insurance provided by the Commercial General Liability Coverage form."  (*Id.* (emphasis added).)  The Plaintiffs assert that under this language, Defendant Markel was required to "stack" the general liability coverage on top of the professional liability coverage, aggregating the multiple insurance coverages to cover KA Broadway's loss.  (ECF No. 54 at 1 (citing *Upshaw v. Trinity Companies*, 842 S.W.2d 631, 632 (Tex. 1992) (internal citation omitted).)  Meanwhile, Defendant Markel asserts that other language in its Policy expressly precludes stacking of limits available under different coverage forms.  (ECF No. 48-1 at 2.)

Markel seeks dismissal of Count I on the basis of its contention that stacking of coverages is not permitted under the language of its Policy.  (*Id.* at 6.)  Alternatively, Markel contends that this Court should dismiss or stay Count I as premature, arguing that this Court may not ever need to address the issue of whether Markel should be required to stack coverages in order to resolve the dispute in this case.  (*Id.* at 9.)  As Markel asserts, the issue

of stacking need only be decided if at least one of the following two scenarios are true. First, Essential and KADF must be additional insureds under the General Liability form of the Markel Policy, and the general liability coverage must have been triggered in the *Lewis* case. Alternatively, KA Broadway must be required to pay KADF contractual indemnification with respect to the *Lewis* litigation. As noted above, the *Lewis* litigation involved an art project planned by KADF/Essential and implemented by KA Broadway at its franchise location. (ECF No. 37 ¶ 15.) The parties still dispute whether either KADF/Essential or KA Broadway is entirely responsible for Lewis' daughter's injury. Markel contends that it should only be required to pay for the negligence of its own insured, KA Broadway. (ECF No. 48-1.) The Defendant believes it should not be required to pay for the negligence of KADF/Essential. (*Id.*) In sum, if the $4,000,000 Markel paid towards the settlement was sufficient to cover the negligence attributable to KA Broadway, then the issue of whether it should be required to stack coverages is irrelevant. (*Id.*)

Nevertheless, at this stage in the litigation, a plaintiff need only state a plausible claim for relief. The Plaintiffs have put forward detailed allegations in support of their contention that both of these factual scenarios exist. Plaintiffs contends that KADF and Essential are additional insureds under Section M of the General Liability form. (ECF No. 37 ¶ 21.) Additionally, they contend that KA Broadway is required to pay KADF contractual indemnification (*id.* ¶ 51), and that issue will be resolved by this very same litigation. As explained above, in Count II of the Second Amended Complaint, Plaintiffs KADF and Essential assert a claim for breach of contract based on KA Broadway's alleged failure to provide complete indemnification with respect to the *Lewis* litigation. And in Count III,

Plaintiff Philadelphia Indemnity claims that due to KA Broadway's own negligence it was required to pay $2,000,000 on behalf of its insureds towards the *Lewis* settlement.  Plaintiffs have adequately alleged that exercising discretion over the declaratory judgment claim in Count I would serve a "useful purpose in clarifying the legal relations in issue."  *See White Marlin*, 2017 WL 467733, at *3.  A plausible claim has been asserted in Count I of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendant KA Broadway's Motion to Dismiss, or in the Alternative for Summary Judgment (ECF No. 40) is DENIED.  Defendant Markel's Motion to Dismiss or Stay as Premature (ECF No. 48) is DENIED.

A Separate Order follows.


Dated: June 14, 2021

_____/s/_____
Richard D. Bennett
U.S. District Judge
